The next argument will be in Case No. 25-1425, Banyan v. Sikorski Mr. Rushing, whenever you're ready. Thank you very much, Your Honors. Is that loud enough? I'm hard of hearing myself, so I sympathize. May it please the Court, my name is Joshua Luke Rushing. I'm here on behalf of the law firm, Huth Reynolds LLP, representing the plaintiff appellant, Jonathan Banyan. So, Your Honors, I'd like to start today talking about malicious prosecution and the summary judgment standard, which will also feed into my discussion of false arrest, and then we will touch on the evidentiary issues and the abandonment issues as well. But starting with malicious prosecution and the summary judgment standard, this is a case where the district court really drew every possible inference against the non-movement, drew every possible inference in favor of the movement of summary judgment. And what I really want to point out is that this is not a case where Mr. Banyan was moving for summary judgment. He was the non-movement. So, you know, the district court really treated this case as though Mr. Banyan had to make his entire case for malicious prosecution at this stage, when really the district court should have been drawing every inference in favor of Mr. Banyan and asking whether there was any material question of fact left. So, starting with malicious prosecution and the initiation prong, one thing I'd like to say is that there are really no cases cited by the district court or cited by our opponents that are good precedents because of the highly police-oriented nature of this case. In this case, there is one officer, Officer Sikorski, who signed the criminal complaint, and there's no disagreement that obviously he can be liable for the initiation prong. The question revolves around whether the other officers, Tenerello, Rule, and Becerra, can also be held liable despite the fact that they did not sign the criminal complaint. They should be held liable for multiple reasons. First, a strict rule that only the officer signing the criminal complaint can be held to have initiated the proceeding would make it extraordinarily easy for officers to structure the allegations that they bring in order to avoid malicious prosecution. For instance, in this case, the jury trial, it was Officer Tenerello who was found guilty, not found guilty, excuse me, found liable in a regular jury verdict and a special jury verdict. So, in an instance where perhaps the officers, there are more than one officers involved in arrest, they realize that one of the officers has committed the grossest misconduct, all they would have to do is have a different officer sign the criminal complaint and they'd be able to defeat any malicious prosecution claim. That is surely not what the law intends. Especially given in non-police-oriented cases, there are several ways to overcome the requirement that the criminal complaint be signed. For instance, if the officers generated witness statements, collected witness statements, passed those on to the prosecutor, any of those would suffice. So, Your Honors, it fails basic common sense to say that because these were not third-party witness statements, but, in fact, first-party witness statements, that somehow they are less liable. Somehow they are less liable even though they have more opportunity to generate falsehoods, even though they have more opportunity to distort the facts. That's not common sense and there's really no case that has considered such a police-oriented claim and had that holding, so there is really no precedent binding this court to find that. Moving on to the other elements of malicious prosecution. One of the major errors, I think, in my esteemed colleague's papers is to act as though the reason Mr. Banyan brings up the grand jury indictment is to make his case for malicious prosecution. That's wrong for multiple reasons. First, again, Mr. Banyan was not the movement for summary judgment, so it was not his job to make out his case at all. It was simply to defeat summary judgment and show there were material issues of fact. But the other reason is not correct. It's not a disputed issue of material fact that the officers believed that your client was resisting arrest. Is that a fair statement? I don't think it would be limited to just that. I do think that is one possible disputed material fact that should have been disputed. That's disputed, that he—you dispute that the officers believe— you dispute, I think, the reasonableness of their belief of that, right? So that's maybe a legal question or a mixed question. But whether they, in fact, believe that he was resisting arrest, I did not understand to be something that was disputed. But correct me if I'm wrong. Well, this incident took place in phases, and, Your Honor, at the very initial phase of this, I would say that not only was it not reasonable for them to believe he was resisting arrest, but that they did not believe he was resisting arrest, particularly— and this gets further into the facts than I think we need to. Yeah, I understand you can break up the time periods of the entire encounter. But at some point, I guess. At some point, I believe that later officers who arrived on the scene, particularly officers who are not Sikorsky and Tenerello, may have a better argument for saying—to argue whether it was reasonable or not, rather than arguing whether they actually did believe it. But the initial two officers, Sikorsky and Tenerello, who witnessed everything that happened, I do not believe, certainly at least for the first half of the encounter, that they had any belief he was resisting arrest, much less a reasonable one. And the special verdict does ask whether they believed it was reasonable, but it does leave open the possibility that they, in fact, did not believe that he was resisting arrest at all. I would say it's open-ended in that way, Your Honor. So going back to malicious prosecution. So the grand jury indictment, my esteemed colleague raised in his papers that we brought that up to act as the basis for malicious prosecution. That is, in fact, not true. The reason that we have brought up the grand jury is because the district court held, after arguments from my opponent, that the grand jury created a presumption of probable cause, which defeats malicious prosecution. However, that presumption is rebuttable, and it's rebuttable by showing that the officers engaged in misconduct, misdescribed evidence, et cetera. All that is in the papers. So we are not – So they have to have then lied in front of the grand jury, right? Say one more time, they must have what? They would have had to have lied in front of the grand jury. I think there are other ways to get there, Your Honor. I don't think that it's limited to that necessarily, but I think that's probably the easiest way to, and I certainly think it happened here. So you think – but what is it – what was it that you put before the court to indicate that somehow they – what facts did you assert that they had somehow lied in front of the grand jury? Sure. Your Honor, in the Starbucks video, which is a very crucial piece of evidence here, the Starbucks video captures the exact crime that Mr. Bannion – I watched it. Yes, Your Honor. So it captures the exact moment, the exact alleged crime that Mr. Bannion is alleged to have committed. And yet Sikorsky said nothing happened in that video. Imagine going – It's hard to tell what happened in that video. It's all through a glass, and there's a reflection. There's a constant flash of light. There's no way to identify who's who. All you see is a group of bodies just kind of struggling around. Well, you say that, Your Honor, but actually a trial, Sikorsky identified several people, including at the deposition. I'm telling what I could see. Sure, sure. But, you know, you weren't there. You weren't one of the participants. You don't know any of the participants. Neither were you. No, sir, but I was not – What I find curious is that somehow you think that somehow the officers had something to do with the Starbucks video not being in front of the grand jury. When does an officer ever have – but you don't assert any kind of facts or from – with regard to who was the presenting assistant district attorney or district attorney. I don't know how you make that connection that keeping the video out of the grand jury's hands was somehow the officers. Your Honor, that's actually a misunderstanding of our argument. We do not believe – Excuse me. I'm sorry. No, no, no. It's okay. I would just like to correct our papers if they weren't clear.  Go ahead. In fact, what we're arguing, Your Honor, is that it is irrelevant whether the grand jury saw the Starbucks video because it had already been so incorrectly described to them. And if you look at the case law talking about rebutting the presumption of probable cause that arises from a grand jury indictment, it has no requirement that the mischaracterized evidence have been shown later or not have been shown or that it be the officer's fault. If you look at the precedent, it simply says that they mischaracterized the evidence or that they gave false testimony. And, Your Honor, objectively that happened here. And I hear you talking about the identifications of who was on the video, but much more critical than that is the fact that imagine there is a murder trial and the detective goes in front of a grand jury and says, well, there's a video but it doesn't show anything. And then we get to trial and it says, well, actually the murder occurs on this video. That is a major mischaracterization of evidence. And, you know, I do think that that is enough to rebut the – excuse me – to rebut the presumption of probable cause that detached from this grand jury indictment. Now, Your Honors, I am aware I am two minutes over time. Would you like me to continue on the other issues or – I think we'll – why don't we hear from you on rebuttal if we do have further questions on that. Thank you very much, Your Honors. I appreciate your questions. Mr. Magnetti. Good morning, Your Honors. May it please the Court, Shane Magnetti for the city appellees. I'd like to pick up on the malicious prosecution argument, and I'll start with the initiation prong. There's no evidence on this record that Rule, Tenariello, or Becerra did anything more than participate in the arrest and testify at trial. And this Court has held in Burgess v. DeJoseph that those kinds of activities are, quote, normal police tasks that do not rise to the level of active police participation. For example, there's no evidence that any of these officers were in touch with the prosecutor to inform their decision to prosecute the case. There's no evidence that any of them even testified before the grand jury. On this record, all we have is a complaint signed by Sikorsky and snippets of Sikorsky's grand jury testimony. There's also no case law to establish the proposition that the initiation prong applies differently in a case where the witnesses or victims are law enforcement. In fact, I'd refer this case to Martinez v. Simonetti. Again, that was a case that involved malicious prosecution claims against law enforcement witnesses and victims, and this Court applied the malicious prosecution analysis the same way that it always does, and it should continue to do so here. As for the probable cause element, the district court correctly determined that Banyon did not rebut the presumption of probable cause that arose from his grand jury indictment. I have a question about the unindicted assault charge where Officer Tonerello was the victim. Does the jury's verdict, excessive force verdict, affect whether there was probable cause or arguable probable cause for that offense? No, Your Honor. So when we're determining whether there's a probable cause to charge in the complaint, it's based on what the officers knew at that time and the determination the prosecutor makes about the evidence that they have. And that's a different standard of proof, and I take your question to be talking about not the criminal trial, the civil trial? The civil trial. Well, because the jury obviously concluded that excessive force was used by Tonerello, and you see no tension at all with that as far as a probable cause finding? Because if there was excessive force and there was this group assault, that would be information that Sikorsky would have when he was filling out the complaint. So I understand that it's at the—I mean, when he was making the charge, I understand that probable cause is at the time of the arrest. Sure. I think that could be a jury question, Your Honor, but I think the facts are, as to Tonerello, that he suffered a concussion during the course of trying to arrest Bannion for this criminal possession of stolen property. And based on the fact that he suffered that injury, which Bannion does not contest, in the course of effectuating a lawful arrest, there's probable cause to at least charge the assault against him. So I guess the question is whether there's any—whether it's a lawful action by the police, whether that's undermined at all by the jury's excessive force finding. No, I don't think the jury's excessive force finding undermines the fact that Tonerello effectuated an arrest of Bannion and was injured in the course of that arrest. That really speaks to, I think, for example, whether these—whether Bannion's resisting efforts were justified. I don't think it undermines probable cause here with respect to the unindicted counts. And if I may just pivot back to the indicted counts here, the crux of Appellant's brief is that Sikorsky misrepresented the Starbucks video in an attempt to get the prosecutor not to show it. And he essentially concedes in his reply brief that the record does not establish whether or not the grand jury video was even played for the grand jury. I think that alone is fatal to his malicious prosecution claim. If you look at this Court's decision in Rothstein v. Carriere, this Court held that the burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury and to further establish that those circumstances weren't a finding of misconduct. All we have on this record are snippets of Sikorsky's grand jury testimony. So there's just not enough information about what happened before the grand jury for this Court or for the district court to have reasonably inferred that there could be misconduct. Now, even crediting—or rather, I should say, Appellant argues on reply that his argument is not necessarily that Sikorsky did this to try and suppress the video, but it's enough that he merely discussed the video before the grand jury. That argument also fails as a matter of law. If you look at the New York Court of Appeals' decision in Delors, Torres v. Jones, the Court of Appeals held as a matter of historically rooted public policy, a witness cannot be liable for malicious prosecution based on his or her false testimony at a trial or pretrial proceeding such as a grand jury proceeding. If this Court needed another reason to affirm, Your Honor, you've seen the video. We've all seen the video. And I don't think any reasonable juror could have found that the video itself is irreconcilable with how Officer Sikorsky described it in the grand jury proceeding. He didn't say that you can't see anything in this video. He said that the video captured the end of the incident, it was blurry, and it showed silhouettes. That's true. If you look at the video, you're not seeing the beginning of the altercation or anything that led up to it. Certainly, as Your Honor pointed out, Judge Wesley, it's backlit by flashing lights. You can't really discern any individual action that anybody is doing. And throughout the rest of this case, even at the criminal trial and his deposition and at this trial, his testimony was consistent. He testified that the video was, quote, not the best visual. The video was unclear. He also described the video as showing a blob of people moving across the screen. To the extent that he was able to identify himself or any other officers or even the defendant, I think it's clear that he did so based on his recollection because none of what he's describing is actually discernible from the video itself. I think the best evidence of that is the way that Banyan himself testified about the video at the trial here. Counsel asked him, after playing the video for the jury, to describe its contents based on his own recollection. Multiple times he used that phrase. So for those reasons, the malicious prosecution claims were properly dismissed. And I'd like to briefly touch on the trial evidence as well. The evidence of Banyan's prior conviction was admissible here, and it was certainly not an abuse of discretion for the court to admit it. If you look at the four-factor inquiry that courts usually apply to admit it, the hang-up here seems to be on the factors of similarity of the crime to the charge conduct and to the weight afforded to credibility. Now, none of Banyan's conduct at issue in this trial involved firearms, so it's really not similar to his conviction for criminal possession of a firearm. And the court was right to place so much weight on the factor of credibility, given the fact that the parties would testify to starkly competing narratives, and the video was too grainy and too incomplete to resolve that disparity. To the extent that there was any prejudice from admitting this video, the court gave two limiting instructions with respect to the video, both after Banyan was cross-examined about it and again before charging the jury. And the court told the jury, you may not infer from this evidence that plaintiff has a propensity for the behavior shown in the video, and the reasonableness of the force used by the officers must be judged by the perspective of a reasonable officer on the scene at the time of the arrest. On appeal, plaintiff does not even mention the court's jury instructions in his opening brief or his reply brief, and he has effectively waived any challenge to their sufficiency. Beyond that, the prior conviction was independently admissible under Rule 404b-2. It was relevant to show Banyan had a motive to arrest. He was on parole at the time of this incident, and as we all know, an arrest if you're on parole can lead to additional jail time. So for that reason, it was independently admissible. As for the precinct video, the video of Banyan's behavior between the time he was arrested and between the time he was taken to the hospital, that was relevant to show why he was hospitalized in the first place. The jury heard from Banyan that it was his choice to be taken to the hospital. He wanted to be treated for injuries as a result of the assault. They heard testimony from the police that, on the contrary, he was taken to the hospital involuntarily because he was not cooperating with booking, did not want to be fingerprinted in the standard protocol, and that scenario is to bring someone to the hospital for a psyche bail. So the precinct video was relevant to help the jury bridge that gap. It was also relevant to show Banyan's physical condition. The jury was asked here to decide whether they should award Banyan any compensatory damages for injuries that he suffered, and here you look at the video and you can see plainly that there's no visible evidence of any physical injury that would substantiate his theory that he was brutally stomped on, kicked, and shoved by 10 officers. And again, the court gave a limiting instruction with respect to the precinct video, which ameliorated any potential prejudice that would have come from it. Now, I know there's a host of other issues raised in the briefing, and my time is dwindling down, so I'm happy to answer any questions that your honors might have about any of the other issues. If not, then I will rest on my brief. Thank you. Thank you, counsel. Mr. Rushing, the bottle. Thank you very much, your honors. I want to thank my esteemed colleague. I'm just going to spend a few minutes here. So first off, I just want to say I feel that the discussion of the Starbucks video is getting hung up on how intelligible it is, but I want to put that aside for a second. That is an issue. It absolutely is. But there is another bigger issue, which is the crimes that Banyan was accused of committing, the actions that are accused of being crimes, happened on that video. So to say that nothing substantial happens on this video is just at the end of it. Even putting aside the intelligibility, Sikorsky describes the content as being unsubstantial, and the content is not unsubstantial. And again, I don't need to prove that to win summary judgment here. The question is, could any reasonable jury possibly find that it's an issue that an officer gets up in front of a grand jury and says, hey, nothing happens on this video, when in fact the thing he's charged with happens on that video? So, you know, I think a jury absolutely could have an issue with that. But again, Delore Torres is highly off point, because we are not saying that that is the basis for malicious prosecution. We are saying that that is what overcomes the rebuttable presumption of probable cause from the grand jury indictment. You know, we did not move for summary judgment on our malicious prosecution claim. All we did was respond to theirs, and they are the ones that raised the grand jury indictment as the presumption of probable cause, which is why we got into the grand jury. You know, we didn't go to trial and say it's all about the grand jury, or, you know, do summary judgment and say it's all about the grand jury. That is all defensive. So just for a moment, I do want to touch on the false— well, actually, perhaps I should touch on some of the evidentiary issues that my esteemed colleague touched on. So when it comes to the precinct video, you know, you can see the district court and my opponent struggling to find a reason that a video an hour later is relevant to excessive force. They say it's for damages, but there were plenty of videos that came in. We had the medical reports come in. There were photos that came in. And we also said to the jury this is not a case where we have, you know, life-altering injuries. We describe them frequently to the jury as non-permanent injuries. So the idea that this video was more probative than prejudicial on the extent of his injuries is entirely incorrect. This is a man who had just been beaten in the street. And I'd also like to point out that, you know, my esteemed colleague said a man who had just claimed to have been stomped and beaten in the street. There is no dispute that that happened. The dispute is whether the police had a right to do it or not. But the police testified at length that they hit my client, kicked him, stomped him, tased him, all of these things. That's not in dispute. And there's no way that it could be. And so the video was never trying to weigh on that. And so when you try to get back to what is this video for, the only thing you can get to is it's character evidence. It's meant to show that he is belligerent. But anybody could be belligerent after being attacked on the street and dropped on their head. So, Your Honors, this video was much, much more prejudicial than it was probative. I am at the time here. I did not get a chance to get to false arrest. If Your Honors have any additional questions about anything, I would be happy to discuss them. I think we're all set. Thank you, Counsel. Thank you very much, Your Honors. We'll take the case under advisement. Thank you, Your Honors.